# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

WILLIAM G. GAWRONSKI,

      Petitioner,

v.                                Case no. 8:07-CV-438-T-30TGW

SECRETARY, DEPARTMENT OF
CORRECTIONS and ATTORNEY
GENERAL OF THE STATE OF FLORIDA,

      Respondents.

_____/

## ORDER

THIS CAUSE comes before the Court upon the Petition for Writ of Habeas Corpus of William Gawronski (hereinafter "Petitioner" or "Gawronski") filed pursuant to 28 U.S.C. §2254 (Dkt. #1), Petitioner's Memorandum of Law (Dkt. #2), the Government's Response (Dkt. #17) filed in opposition thereto, Petitioner's Reply (Dkt. #20), and Petitioner's Amended Reply (Dkt. #27). Because the Petitioner fails to meet the standards of 28 U.S.C. §2254 (d), this cause will be denied.

## BACKGROUND

On May 33, 1998, Gawronski was stopped for running a stop sign. After the officer asked for documentation, a high speed chase ensued. Gawronski eventually jumped a fence in the vicinity of the residences of Larry Miller (Miller) and Harold Barber (Barber). A police helicopter aided in his apprehension. Although no contraband was found at the time

of his apprehension, the next day Miller found a black bag containing 90 grams of cocaine, a firearm, and a power of attorney from Gawronski to Charles Hamilton. A separate purple and gold Crown Royal bag containing an additional amount of cocaine was found by Barber's son.

At trial, the defense theorized Gawronski had been set up by Mr. Hamilton. After a jury trial, Gawronski was found guilty of armed trafficking in cocaine, felony fleeing to elude, and felonious possession of a firearm. He was adjudicated guilty of the offenses in accordance with the verdicts and sentenced as an habitual felony offender to life in prison for armed cocaine trafficking, ten years prison on the felony fleeing to elude, and thirty years prison for felonious possession of a firearm. The sentences ran concurrently.

Gawronski appealed. Upon his appellate counsel's filing of an Anders[1] brief, Gawronski availed himself of the opportunity afforded to file a *pro se* brief. The state district court per curiam affirmed without written decision. Gawronski v. State, 763 So. 2d 325 (Fla. 2d DCA 2000). Gawronski did not seek rehearing, nor did he pursue certiorari review in the United States Supreme Court.

Gawronski filed a pro se petition for writ of habeas corpus dated November 3, 2000. The state appellate court denied the petition without prejudice after learning that Gawronski filed a rule 3.850 motion. Gawronski v. State, 792 So. 2d 457 (Fla. 2d DCA 2000). Rehearing was denied April 23, 2001.

---

[1]Anders v. California, 386 U.S. 738 (1967).

By then, Gawronski had filed a *pro se* supplement dated January 30, 2001, which was treated as a separate habeas petition asserting that appellate counsel rendered ineffective assistance in his direct appeal. After securing a response from the state and the submission of a reply by Gawronski, the state appellate court on October 4, 2001, denied the second habeas petition without written decision. <u>Gawronski v. State</u>, 799 So. 2d 1036 (Fla. 2nd DCA 2001). Gawronski improperly sought further review of the silent decision for which jurisdiction did not lie. Accordingly, on October 23, 2001, the state's supreme court denied the petition for review. <u>Gawronski v. State</u>, 799 So. 2d 217 (Fla. 2001).

Gawronski had previously filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. Although it was initially denied for lack of jurisdiction, the state appellate court reversed and remanded the case for the trial court to consider the merits of Gawronski's motion. <u>Gawronski v. State</u>, 801 So. 2d 211 (Fla. 2nd DCA 2001). The mandate issued January 2, 2002.

Gawronski filed another *pro se* rule 3.850 motion dated January 8, 2002, which was treated at that juncture as an amendment to his original postconviction motion. The postconviction court summarily denied ground one of Gawronski's rule 3.850 motion, as well as two claims in his second ground, and two claims in his third ground. In an amended non-final order rendered May 20, 2002, the postconviction court, noting it had overlooked a voluntary dismissal, treated the January 8, 2002 3.850 motion as a separate collateral attack. The state was ordered to respond to six subclaims of ground two. In another non-final

order dated July 12, 2002, the postconviction court summarily denied subclaim two of the second ground.

Evidentiary proceedings were conducted May 20, 2005, on the outstanding claims. By final order rendered June 21, 2005, the postconviction court denied all grounds. Gawronski appealed, and following briefing, the Second District affirmed. <u>Gawronski v. State</u>, 944 So. 2d 360 (Fla. 2nd DCA 2006). After denial of Gawronski's motion for clarification, the mandate issued December 13, 2006. Gawronski timely filed the instant 28 U.S.C. § 2254 petition on March 7, 2007.

Petitioner raises the following grounds in support of his motion:

**<u>Ground One:</u>**    Trial Counsel was ineffective for undertaking unreasonable trial strategy eliciting Petitioner's inculpatory statements to police, without Petitioner's knowledge, thereby shifting the burden of proof of guilt and denying Petitioner's substantive constitutionally guaranteed rights under the Fifth, Sixth, and Fourteenth amendments.

**<u>Ground Two:</u>**    Trial Counsel was ineffective for failure to motion the court to exclude notice of Petitioner's Character as a 'convicted felon' where defense counsel knew the Petitioner would not testify, thereby substantially violating Petitioner's right to remain silent as guaranteed under the Fifth, Sixth, and Fourteenth amendments.

**<u>Ground Three:</u>**    Ineffective assistance of counsel and prosecutorial misconduct for failure to move for mistrial after the prosecutor presented hearsay testimony which denied Petitioner his right to confront and cross-examine witnesses establishing substantial violations under the Fifth, Sixth, and Fourteenth amendments.

**<u>Ground Four:</u>**    Counsel was ineffective for failure to subpoena or call a handwriting expert which denied Petitioner a viable defense by excluding proof of instrument forgery thereby denying Petitioner's hypothesis of innocence and causing prejudice sufficient to deny a fundamentally fair

trial violating Petitioner's rights under the Fifth, Sixth, and Fourteenth amendments.

**Ground Five:** Ineffective assistance of counsel where counsel was not conflict free as demonstrated by counsel's failure to preserve issues for appellate review and prosecutorial misconduct where the prosecutor allegedly urged the jury to convict Petitioner based on characteristics of his being a 'large-scale" drug dealer where no proof was offered; thereby denying substantial safe guards under the Fifth, Sixth, and Fourteenth amendments.

**Ground Six:** Counsel was ineffective for failure to move for mistrial based on the prosecutor misrepresenting to jury during closing argument Petitioner's guilt by inference (stacking) rather than by evidence, causing prejudice and substantial violations of Petitioner's rights under the Fifth, Sixth, and Fourteenth amendments.

## AEDPA STANDARD OF REVIEW

The standard of review in a federal habeas corpus proceeding is quite strict, resulting in a very heavy burden on the petitioner to successfully overturn a state court conviction. Since Petitioner's conviction was entered after the enactment of the Antiterrorism and Effective Death Penalty Act ("AEDPA") effective April 24, 1996.[2], see <u>Lindh v. Murphy</u>, 521 U.S. 320, 336 (1997), his petition is subject to the provisions thereof. Pursuant to 28 U.S.C. § 2254(d):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

---

[2]The AEDPA imposes a one-year statute of limitations on all habeas corpus petitions. See 28 U.S.C. § 2244(d)(1).

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1 - 2)

Thus, the AEDPA "establishes a more deferential standard of review of state habeas judgments," Fugate v. Head, 261 F.3d 1206, 1214 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002); see also, Bell v. Cone, 543 U.S. 447, 455 (2005) (habeas court's standard for evaluating state court ruling is highly deferential, which demands that state-court decisions be given the benefit of the doubt) [citing 28 U.S.C.A. § 2254(d)].   The Supreme Court analyzed the application of this standard of review in Williams v. Taylor, 529 U.S. 362 (2000).[3]

In Williams, the Supreme Court held that "§ 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." Id. at 412. First, the federal court evaluating a habeas petition under § 2254(d)(1) must determine the applicable "clearly established Federal law, as determined by the Supreme Court of the United States."

---

[3]The interpretation of amended §2254(d) was decided in Part II of Williams and the Court quotes from Justice O'Connor's opinion.

28 U.S.C. § 2254(d)(1). This law can be found in "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412.

Next, the court must determine whether one of the two conditions set forth in §2254(d) applies. In Williams, the Supreme Court held that "[u]nder the 'contrary to' clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 405-06; see also Brown v. Payton, 125 S.Ct. 1432, 1438 (2005). A state court does not have to cite the Supreme Court precedent, or even be aware of it, so long as neither its reasoning nor its result contradicts Supreme Court precedent. Early v. Packer, 537 U.S. 3, 8 (2002); Parker v. Sec'y of Dep't of Corr., 331 F.3d 764, 775-76 (11th Cir. 2003). Where no Supreme Court precedent is on point, or the precedent is ambiguous, it cannot be said that the state court's conclusion is contrary to clearly established governing federal law. Mitchell v. Esparza, 540 U.S. 12, 17 (2003); Clark v. Crosby, 335 F.3d 1303, 1308-10 (11th Cir. 2003). Where, as here, the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable. Yarborough v. Gentry, 124 S.Ct. 1, 4 (2003); Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002) (per curiam); Williams, 529 U.S. at 409.

An objectively unreasonable application of clearly established Supreme Court precedent occurs when (1) a state court identifies the correct legal rule but unreasonably applies it to the facts or (2) a state court either unreasonably extends a legal principle from precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1141 (11th Cir. 2005). The determination of unreasonableness is an objective one and the federal court may not issue a writ of habeas corpus simply because it concludes, in its independent judgement, that the state court decision was erroneous or incorrect. Williams, 529 U.S. at 410-11. It is the habeas applicant's burden to show the state court applied that case to the facts of his case in an objectively unreasonable manner. Price v. Vincent, 538 U.S. 634, 641 (2003).

Under the unreasonable application standard, a state court's determinations of fact shall be "presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Henderson v. Haley, 353 F.3d 880, 890-91 (11th Cir. 2003). This statutory presumption of correctness applies only to findings of fact made by the state court, not to mixed determinations of law and fact. McBride v. Sharpe, 25 F.3d 962, 971 (11th Cir. 1994). Congress, in passing the AEDPA, also erected additional barriers limiting a habeas petitioner's right to discovery or an evidentiary hearing. Crawford v. Head, 311 F.3d 1288,

1328-29 (11th Cir. 2002); see also 28 U.S.C. §2254(e)(2).[4]

## INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

The Sixth Amendment to the United States Constitution provides the right of the accused to have effective assistance of counsel for his defense. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one. See Osborne v. Terry, 466 F.3d 1298, 1305 (11th Cir. 2006). "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc). It is well established that to prevail on an ineffective assistance claim, the accused must satisfy the two-prong inquiry of Strickland v Washington, 466 U.S. 668, 687 (1984).

First, Petitioner must demonstrate that his attorney's performance was deficient, meaning that "counsel made errors so serious that counsel was not functioning as the

---

[4]§ 2254(e)(2) provides:
If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the
applicant shows that—
(A) the claim relies on—
    (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
    (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense. The Supreme Court has interpreted § 2254(e)(2) to mean that a petitioner who "failed to develop" the factual basis for a claim while in state court as a result of the petitioner's lack of diligence is barred from doing so in federal court (subject to the very narrow exceptions set out in § 2254(e)(2)). Williams v. Taylor, 529 U.S. at 433-34.

'counsel' guaranteed to the defendant by the Sixth Amendment." <u>Strickland</u>, 466 U.S. at 687.

In order to establish deficient performance, the petitioner must show that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence. <u>Chandler v. United States</u>, 218 F.3d 1305, 1314 (11th Cir. 2000)(citations omitted). The court's review of counsel's performance should focus on "not what is possible or what is prudent or appropriate, but only [on] what is constitutionally compelled." <u>Id.</u> at 1313. There are no absolute rules dictating what is reasonable performance because absolute rules would restrict the wide latitude counsel have in making tactical decisions. <u>See</u> <u>Chandler</u>, 218 F.3d at 1317.

The test for ineffectiveness is not whether counsel could have done more; perfection is not required. Nor is the test whether the best criminal defense attorneys might have done more. <u>Id.</u> at 1313. Instead the test is . . . whether what they did was within the "wide range of reasonable professional assistance." <u>Id.</u> at n.12. The court's review of counsel's performance must be highly deferential, and the court must avoid second-guessing counsel's performance. <u>See</u> <u>Strickland</u>, 466 U.S. at 689. For a petitioner to show deficient performance, he "must establish that no competent counsel would have taken the action that his counsel did take." <u>Chandler</u>, 218 F.3d at 1316.

Second, Petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694. "A reasonable probability is a probability sufficient to

undermine confidence in the outcome." <u>Id.</u>

If Petitioner fails to establish either deficient performance or prejudice, the court need not address the other prong. <u>Id.</u> at 697 ("There is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."); <u>see</u> <u>also</u> <u>Sims v. Singletary</u>, 155 F.3d 1297, 1305 (11th Cir. 1998). The standards of effective assistance set forth in <u>Strickland</u> apply to appellate counsel, as well as to trial counsel. <u>Matire v. Wainwright</u>, 811 F.2d 1430, 1435 (11th Cir. 1987).

## <u>DISCUSSION</u>

**Ground One**:     <u>Ineffective Assistance of Counsel</u>

In support of Ground One, Petitioner claims that his counsel was ineffective for employing an unreasonable trial strategy. Petitioner alleges that his counsel was ineffective for advising the jury that Petitioner was a convicted felon, without Petitioner's permission, and then eliciting the inculpatory statement before the jury that Petitioner had eluded and attempted to flee police because he did not want to go back to prison. Petitioner believes his counsel's actions gave the jury reason to speculate as to the type of crime Petitioner previously committed. According to Petitioner, he was prejudiced because his right to remain silent was abridged, thus violating his due process rights. Petitioner asserts that these actions by counsel operated to shift the burden of proof.

In subclaim three of ground two of Petitioner's rule 3.850 motion, Petitioner faulted his counsel for stipulating to Petitioner's convicted felon status. However, at the evidentiary hearing, Petitioner's postconviction relief counsel advised the court that he would not be arguing subclaim three. In turn, the postconviction court found that subclaim three had been waived.

In subclaim four of ground two of Petitioner's rule 3.850 motion, Petitioner claimed his counsel was ineffective for using Petitioner's statement to police, that he did not want to go back to prison, to explain his fleeing the officers. In denying this ground after an evidentiary hearing, by order rendered June, 21, 2005, the postconviction court held, in relevant part:

> In response to claim 4, the Court finds that, although not expressly waived as claim 3 had been, there was no evidence presented at the evidentiary hearing that supported claim 4. As such, the Court finds claim 4 was tacitly waived by omission. In addition, based upon the testimony of Defendant's trial counsel, and other arguments and evidence presented at the evidentiary hearing, the Court finds Defendant's trial counsel's strategy of relying on Petitioner's statement that he fled from police because he did not want to go back to prison as reason why he fled from officers was a reasonable trial tactic. This finding is bolstered by the State's argument at trial that Petitioner fled from police because he did not want to be caught with a firearm and a trafficking amount of cocaine. Additionally, such statement was consistent with defense counsel's legal arguments and presentation of the case. Accordingly, the Court finds **claim 4 should be and is hereby DENIED.**

Resp. Ex. 35 at 2.

The postconviction court explicitly stated that Petitioner's claims were barred under the state procedural doctrines of 'waiver' and 'waiver by omission'. The appellate court

affirmed without written opinion. Federal review is permitted if "it fairly appears that the state court rested its decision primarily on federal law, . . . unless the state court's opinion contains a plain statement that its decision rests upon adequate and independent state grounds." Harris v. Reed, 489 U.S. 255, 261 (1989) (Internal marks omitted). Not only does Petitioner fail to demonstrate that the post-conviction court relied on federal law in denying subclaim three and subclaim four of ground two of his rule 3.850 motion, the court plainly stated that its denial was based on state law. Therefore, any claimed violation of federal law is procedurally defaulted. Petitioner fails to overcome procedural default by showing either "cause" for the default and "prejudice attributable thereto," or that failure to consider the federal claim resulted in a "fundamental miscarriage of justice." See id. at 262. (Citations omitted). Therefore, federal review of Ground One is foreclosed.

Petitioner also fails to satisfy the two-prong standard set forth in Strickland, 466 U.S. at 687. Petitioner contends that his counsel's strategy and stipulation operated to shift the burden of proof. However, at the state evidentiary hearing, Petitioner failed to demonstrate that, absent any stipulation, the state was not otherwise able to establish that he was a felon, a necessary element in proving the 'felony possession of a firearm' charge. Additionally, in denying relief after the evidentiary hearing, the postconviction court concluded counsel's strategy of relying on Petitioner's statement that 'he fled from police because he did not want to go back to prison as reason for his flight from the officers' to be reasonable. Therefore, Petitioner fails to demonstrate deficiency under Strickland.

Furthermore, Petitioner fails to account for the state's independent evidence of his guilt on the armed trafficking and fleeing charges. The record provides ample support to conclude that there was no reasonable probability of a different outcome had counsel not acknowledged Petitioner's convicted felon status or not utilized his statement to officers about not wanting to go back to prison.

The postconviction court's decision on subclaims three and four of ground two of Petitioner's rule 3.850 motion, which make up the basis of Ground One of the instant petition, rested on state procedural grounds, resulted in a reasonable application of <u>Strickland</u> under either prong, and resulted in a reasonable determination of the facts in light of the evidence. Therefore, Ground One will be DENIED.

**Ground Two**:     <u>Ineffective Assistance of Counsel</u>

In Ground Two, Petitioner claims his attorney was ineffective for not moving to exclude evidence that Petitioner was a convicted felon. Again, Petitioner faults his counsel for using his statement to police. He asserts that he was not advised of his rights before making the statement to police that, "he was on parole and did not want to go back to jail." (habeas memorandum at p. 8). Thus, Petitioner suggests that his statement was given in violation of <u>Miranda v. Arizona</u>, 384 U.S. 456 (1966), and then used in violation of his constitutional right to remain silent.

In subclaim three of ground two of his rule 3.850 motion, Petitioner alleged that his counsel was ineffective for not moving to exclude evidence that he was a convicted felon.

The postconviction court found that Petitioner waived subclaim three. Further, Petitioner's counsel could not have excluded evidence that Petitioner was a convicted felon because it is material to an element of a crime charged: felony possession of a firearm.

In subclaim four of ground two of his rule 3.850 motion, Petitioner argued that his counsel, knowing that he had decided not to testify, violated his right to remain silent by eliciting his statement indicating that he fled because he was a felon and he did not want to go back to prison. The postconviction court found that Petitioner abandoned subclaim four at the state hearing under waiver by omission. Petitioner does not make the required showing to permit federal review of ground two of the instant petition. See Coleman, 501 U.S. at 729-30.

In addition, Petitioner does not demonstrate that his counsel was deficient, under Strickland, for employing Petitioner's statement to strategically explain Petitioner's flight from police and dissuade the jury from believing that Petitioner fled because did not want to be caught with the trafficking amount of cocaine while armed. He also fails to show any reasonable probability of a different outcome had counsel performed as proposed, which is required under Strickland's prejudice prong.

The postconviction court's decision on subclaims three and four of ground two of Petitioner's rule 3.850 motion, which make up the basis of Ground Two of the instant petition, rested on independent state grounds, involved a reasonable application of Strickland under either prong, and resulted in a reasonable determination of the facts in light of the

evidence. Therefore, Ground Two will be DENIED.

**Ground Three**:      Ineffective Assistance of Counsel and Prosecutorial Misconduct

In Ground Three, Petitioner claims his counsel was ineffective for not seeking a mistrial on grounds that the state elicited hearsay testimony, which deprived him of his Sixth Amendment right to confrontation. Petitioner's claim focuses on Harold Barber's (Barber) testimony that his son, Jody, found a Crown Royal bag containing 6.7 grams of cocaine.

In subclaim two of ground two of Petitioner's rule 3.850 motion, (which makes up the basis of Ground Three of the instant petition) Petitioner raised only a claim of ineffective assistance of counsel.  Although Petitioner construes the presentation of Barber's testimony as prosecutorial misconduct, he failed to raise a substantive claim of prosecutorial misconduct at trial, on direct appeal, or in his rule 3.850 motion. Thus, ground three is exhausted only as a substantive claim of asserted ineffective assistance of counsel. See Henderson v. Campell, 353 F.3d 880, 891 (11th Cir. Ala. 2003).

In denying subclaim two of ground two of Petitioner's rule 3.850 motion, the postconviction court held, in relevant part, in its July 12, 2002, order as follows:

> . . . The Defendant contends Harold Barber's testimony (his son found the bag under the truck) constituted hearsay and that counsel should have objected to its  introduction. The Court requested that the State respond to this claim. In its Response, the State contends that even had such an objection been made and sustained, the outcome of the trial would not have been different. See Strickland v. Washington, 466 U.S. 688, 104 S.Ct. 2052, 80 L.Ed.2d  674 (1984). The State bases this contention, in part, on the fact that there was sufficient evidence without the contested bag to both charge and convict Defendant of trafficking in cocaine. After review of the Response and arguments raised therein, the Court finds that Defendant's claim fails the

second prong of <u>Strickland</u>, *supra*, and is therefore **DENIED**.

. . . .

Resp. Ex. 34 at 5(i).  The postconviction court's order was affirmed on appeal.

Petitioner does not satisfy the prejudice prong of <u>Strickland</u>. Even if Petitioner could demonstrate that Barber's testimony was hearsay under Florida evidence law and resulted in a confrontation violation, the error would be harmless in light of the state's other evidence..  <u>See</u> <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637 (1993). It was the black bag, not the Crown Royal bag found by Barber's son, which contained the trafficking amount of cocaine, the firearm, and the power of attorney bearing Petitioner's name. On account of other independent evidence establishing Petitioner's guilt beyond a reasonable doubt of the offenses for which he stands convicted, he is unable to show there was any reasonable probability of a different outcome had counsel moved for mistrial as to the Crown Royal bag. The state court's decision resulted in a reasonable application of <u>Strickland</u> under either prong and a reasonable determination of the facts in light of the evidence.  Therefore, Ground Three will be DENIED.

**Ground Four**:      <u>Ineffective Assistance of Counsel</u>

In Ground Four, Petitioner claims that counsel was ineffective for failing to call a handwriting expert to refute allegations that the signature on the power of attorney was Petitioner's signature. In denying this ground after an evidentiary hearing, by order rendered June, 21, 2005, the postconviction court held, in relevant part:

> In support of claim 7, that trial counsel was ineffective for failing to call a handwriting expert as a defense witness, Defendant produced Mr. Ray Green

as a witness at the evidentiary hearing. Mr. Green, an acknowledged handwriting expert, testified that the purported signature of Defendant on the Power of Attorney and the bank documents were not the Defendant's and that, based on the limited exemplars he had of Mr. Hamilton, there was a "strong indication" it was Mr. Hamilton that had forged Defendant's signature.

The decision to call an expert witness is examined in light of all present tactical factors. Carmona v. State, 814 So. 2d 481 (Fla. 5th DCA 2002). Defense counsel testified at the evidentiary hearing that he did not pursue a handwriting expert because of the potential results. Specifically, defense counsel advised that, if the signature was that of Defendant, it would have tied him directly to the evidence and would be directly contrary to the defense that the items were planted by Mr. Hamilton; if it was not Defendant's signature, it would not have established that Defendant did not have a copy of the documents in his possession during the incident, especially since the documents had been purportedly created two months prior to the instant incident and Defendant had received copies of the documents from the bank at that time. In addition, Defendant's trial counsel testified that a defense proffered handwriting expert would have diffused the defense argument that it was the State's burden to establish and prove that it was Defendant's signatures on the recovered documents and that the State had failed to prove the issue. Lastly, defense counsel testified that he had the same arguments and theories available to him without the testimony of a handwriting expert and without the danger of being "put in a box" if the testimony did not produce a favorable result.

The last witness to testify at the evidentiary hearing was the Defendant. Defendant acknowledged the whole issue was whether he had in his possession the Power of Attorney and the two bank documents during the pursuit, or whether Mr. Hamilton had the documents and then placed them at the scene after the arrest and before they were discovered the following morning. Defendant also acknowledged that it was his theory of the case that Mr. Hamilton planted the bags at the scene in an effort to frame the Defendant so that Mr. Hamilton could then empty out the Defendant's bank account, as he had allegedly attempted to do two months earlier.

Lastly, Defendant acknowledged that the only way to present such a defense was by either: 1) Offering the Defendant's testimony that he had given the documents to Mr. Hamilton two months before the instant incident during a confrontation between the two of them; and 2) Presenting the testimony of the

Defendant's girlfriend that she had been summoned to the scene to retrieve the vehicle Defendant had been driving during the incident and, when she responded, she had brought with her Mr. Hamilton. Such testimony would have shown how Mr. Hamilton learned of the arrest and location and was, therefore, able to plant the evidence within such a short window of opportunity.

However, Defendant admitted that: 1) It was his decision not to testify at trial; and 2) He never advised his trial counsel to call his girlfriend as a witness or that his girlfriend may be able to offer the above described testimony.

Based upon all of the above, the Court finds defense counsel's decision not to call an expert [sic] handwriting expert was a reasonable and justifiable decision. As a result, the Court finds **claim 7 should be and is hereby DENIED.**

. . . .

Resp. Ex. 35 at 4-5.

Petitioner does not provide clear and convincing evidence to refute the presumption in favor of the state court's decision. 28 U.S.C. § 2254(e)(1). He further fails to refute the presumption that trial counsel's decision not to call a handwriting expert was strategic and fell within the wide range of professional competent assistance. See <u>Strickland</u>, 466 U.S. at 690. It is objectively reasonable for a trial attorney to decide not to present a handwriting expert under these circumstances. Since it is was a reasonable strategic decision, it was not deficient performance on the part of trial counsel.

This ground also can be denied on <u>Strickland's</u> prejudice prong. Although Petitioner claims that the omitted testimony was vital to his theory of innocence, Petitioner's assertions are entirely speculative. Even if a handwriting expert testified that the signature on the power of attorney was not Petitioner's, the state could still offer evidence that Petitioner had

possession of the power of attorney two months prior and that they found the black bag containing cocaine and a gun within the area where Petitioner was apprehended. It is therefore reasonable for an attorney to conclude that such expert testimony would not preclude the jury from finding that Petitioner possessed the document, cocaine and firearm and fled officers to avoid capture for armed cocaine trafficking and felonious possession of a firearm.

Furthermore, Petitioner's theory of innocence was premised on the notion that Hamilton set him up to obtain money from an account having a balance less than the street value of the cocaine. (Resp. Ex. 36, Vol. II, at 276). The proposed expert handwriting testimony would not fill the gaps in Petitioner's theory of innocence. It is objectively reasonable to conclude there was no reasonable probability of a different outcome had counsel called a handwriting expert in lieu of or in addition to the chosen strategy.

Petitioner further faults counsel for not calling Debbie Murray, an employee of Sun Trust Bank, whom he claims would have testified that Hamilton attempted to withdraw $5000.00 from Petitioner's bank account using a forged power of attorney. However, Petitioner was afforded an evidentiary hearing on this issue and failed to establish his factual support. In denying subclaims five and six of ground two of Petitioner's rule 3.850 motion by order rendered June 20, 2005, the postconviction court held, in relevant part:

> In response to claims 5 and 6, although Defendant speculated as to what potential witnesses Debbie Murray and David A. Battles would have testified to at the trial based upon Defendant's version of events, Defendant failed to produce either witness at the evidentiary hearing. As such, Defendant has failed to establish what Debbie Murray and David A. Battles would have

actually testified to at trial. The Court finds this is fatal to Defendant's claims.

As stated in Schofield v. State, 681 So. 2d 736, 737-38 (Fla. 2d DCA 1996), *remanded on other grounds*, 861 So. 2d 1244 (Fla. 2d DCA 2003):

> Under Strickland v. Washington, 466 U.S. 668, 104 S. Court. 2052, 80 L. Ed 2d 674 (1984), ineffective assistance of counsel claims have two components. A defendant must show: (1) that his attorney made errors so serious that he or she was not functioning as the counsel guaranteed by the Sixth Amendment, and (2) that but for the errors, the result of the trial would have been different. 466 U.S. at 687. In reviewing these claims, courts must apply a strong presumption that counsel's conduct falls within the range of reasonable professional assistance and must avoid the distorting effects of hindsight. . . . A defendant bears the burden of establishing both prongs of the Strickland test before a criminal conviction will be vacated.

Because Defendant has failed to produce any direct, credible evidence of what Debbie Murray and David A. Battles would have testified to at trial, Defendant has failed to meet the prejudice prong of the Strickland test. This is because, even assuming trial counsel's performance was deficient, Defendant has failed to establish that, but for counsel's errors, there is any reasonable probability that the outcome of the trial would have been different. See Bowman v. State, 748 So. 2d 1082 (Fla. 4th DCA 2000)("[W]hile the alibi evidence conceivably could have affected the verdict, *Strickland* requires more than a showing that the errors had some conceivable effect on the outcome. The defendant must demonstrate a reasonable probability- i.e., one that undermines confidence in the outcome - that absent counsel's errors, the fact finder would have had a reasonable doubt respecting guilt. Strickland, 466 U.S. at 694.")

The Court also finds, due to the testimony actually adduced at the hearing, that trial counsel's performance was neither ineffective nor deficient as it relates to either Debbie Murray or David A. Battles. As to Debbie Murray, defense counsel testified that he tried on at least three occasions to contact Ms. Murray at the phone number provided by defendant without success. As to Mr. Battles, Defendant never requested that defense counsel contact Mr. Battles, and defense counsel believed Mr. Battles' anticipated testimony wound not have aided the defense's case. This is because, given Defendant's own version of events at the time, the reasonably anticipated trial testimony, the reasonably anticipated arguments of the prosecutor, and the most viable defense available,

defense counsel would not have done anything different in his preparation or presentation of this case to the jury even if he had the anticipated testimony of either Mrs. Murray or Mr. Battles. After hearing and considering all the evidence at the evidentiary hearing on these issues, the Court finds such assessment was reasonable and justifiable. Based on the above, **claims 5 and 6 should hereby be DENIED**.

Resp. Ex. 35 at 3-4.

As the postconviction court found, Petitioner did not call Murray or David Battles at the state probe, and he demonstrated neither deficient performance nor resulting prejudice from counsel's foregoing pursuit of their information. The state decision on this ground resulted in a reasonable application of <u>Strickland</u> under either prong and a reasonable determination of the facts in light of the evidence. Therefore, Ground Four will be DENIED.

**Ground Five**:        <u>Ineffective Assistance of Counsel and Prosecutorial Misconduct</u>

In Ground Five, Petitioner asserts that his counsel was not conflict free as evidenced by his failure to preserve issues of prosecutorial misconduct for review. According to Petitioner, the prosecutor inflated the value of the drugs and urged the jury to convict Defendant based on his exhibiting characteristics of a large-scale drug dealer, a fact he argues was not proven during trial. Petitioner further faults counsel for not objecting when the prosecutor allegedly urged the jury to hold Petitioner's decision not to testify against him, which he believes shifted the burden to him to prove he was not guilty.

In summarily denying ground one of Petitioner's rule 3.850 motion by order rendered May 17, 2002, the postconviction court held, in relevant part:

> . . . In ground one, the Defendant contends that he was denied the right to conflict-free counsel and the preservation of issues for appellate review, such

as ineffective assistance of trial counsel and prosecutorial misconduct. In his vague argument, the Defendant appears to be alleging that had the Court informed him of his right to conflict-free counsel, he would have opted to plead indigency and have other counsel appointed. Not only has the Defendant failed to demonstrate a conflict, if any, but he has also failed to show how the alleged conflict impaired the performance of counsel. See Cuyler v. Sullivan, 446 U.S. 335, 345, 100 S.Ct. 1708, 1717, 64 L.Ed.2d 333 (1980). The Defendant further contends that he was denied the right to the preservation of issues for appellate review, such as ineffective assistance of counsel and prosecutorial misconduct. However, claims of ineffective assistance of counsel are properly brought in a motion for post-conviction relief rather than on direct appeal. See Kelley v. State, 486 So.2d 578 (Fla. 1986); See also Mansfield v. State, 758 So.2d 636 (Fla. 2000). The Defendant raises the issue of prosecutorial misconduct in ground one but failed to demonstrate any specific allegations of prosecutorial misconduct in ground one. The Defendant furthers his prosecutorial argument in ground three. The Court finds that the Defendant is not entitled to relief on ground one.

. . . .

Resp. Ex. 33 at 2.

In summarily denying ground three of Petitioner's rule 3.850 motion by order

rendered May 17, 2002, the postconviction court held, in relevant part:

In ground three, the Defendant brings two claims of prosecutorial misconduct. In claim one, the Defendant alleges prosecutorial misconduct in the State's closing argument when the prosecutor tells the jury to convict the Defendant because the Defendant exhibits the characteristics of large-scale drug dealers. The record does not support such an allegation, and the Defendant's argument is without merit. (TT, pp. 328-350, attached). In claim two, the Defendant argues prosecutorial misconduct when the State commented during closing argument on the Defendant's right to remain silent by not testifying. Again, the State's closing argument does not reflect any such statements, and the Defendant's argument is without merit. Therefore, the Defendant is not entitled to relief on ground three.

Resp. Ex. 33 at 4.

Petitioner is factually incorrect; the prosecutor did not make the comments asserted.

Therefore, the ground has no merit and must fail.

It can be reasonably determined from the state record that the comments the prosecutor did make were permissible comments on the evidence and did not shift the burden of proof. Therefore, it is objectively reasonable to conclude that there was no reasonable probability of a different outcome had counsel objected to the prosecutor's remarks. See e.g., Chandler v. Moore, 240 F.3d 907, 914 (11th Cir. 2001).

When deciding whether the prosecution's closing argument at the guilt-innocence stage of a trial rendered a defendant's conviction fundamentally unfair, Darden v. Wainwright, 477 U.S. 178, 179 (1986), . . . a petitioner must show that the comments so infected the trial with unfairness as to make the resulting conviction a denial of due process. Id. at 181. However, it is not enough that a prosecutor's comments were undesirable or even universally condemned. See Cobb v. Wainwright, 609 F. 2d 754, 755-56 (5th Cir. Fla. 1980). Petitioner fails to demonstrate that the prosecutor's comments resulted in a denial of due process. For the foregoing reasons, Ground Five will be DENIED.

**Ground Six**:        Ineffective Assistance of Counsel

In Ground Six, Petitioner claims that counsel was ineffective for not seeking a judgment of acquittal and a mistrial, during closing argument, on grounds the prosecutor engaged in impermissible inference stacking in seeking a conviction. Petitioner asserts that the prosecutor based presumptions on other presumptions as a basis for determining an ultimate fact.

In summarily denying this claim by order rendered May 17, 2002, the postconviction court held, in relevant part:

In ground two, claim one, the Defendant contends that the counsel was ineffective for failing to request a Judgment of Acquittal at the close of the State's case. However, the record reflects that trial counsel argued that the State had not presented a proven prima facie case and moved for a Judgment of Acquittal on all three charges. (Trial Transcript ("TT"), pp 302-303, attached). The Defendant's claim of ineffective assistance of counsel for failing to request a Judgment of Acquittal is without merit, and he is not entitled to relief on the claim.

Resp. Ex. 33 at 2-3.

Petitioner suggests that the state's proof failed to exclude his hypothesis of innocence. Whether the state's evidence is sufficient under Florida law to withstand a motion for judgment of acquittal is solely a state law matter. State courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters. See Agan, 119 F.3d at 1549.

Petitioner contends that the state's case was built on inferences. However, direct evidence, including the observations of the officers and the testimony of Miller and Barber, along with the physical and circumstantial evidence, support the conclusion that a rational jury could find, beyond a reasonable doubt, that Petitioner committed the crimes alleged.

This ground also can be denied on Strickland's prejudice prong. In light of the ample evidence presented from which a rational jury could find Petitioner guilty of the offenses for which he stands convicted, had counsel argued further for an acquittal or moved for mistrial as proposed, there was still no reasonable probability of a different outcome.

Therefore, Ground Six will be DENIED.

It is therefore ORDERED AND ADJUDGED that:

1.      Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. §2254 (Dkt. #1) is DENIED.

2.      The Clerk is to enter judgment for Respondents, terminate any pending motions, and close this case.

**DONE** and **ORDERED** in Tampa, Florida on April 13, 2009.


JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

F:\Docs\2007\07-cv-438.deny 2254.wpd